IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

JOSEPH M. MONTANO

    Plaintiff,

v.                                                                                                          1:14-cv-00079-WJ-SCY

PUBLIC SERVICE COMPANY OF NEW MEXICO

    Defendant.

## SECOND REVISED JOINT STATUS REPORT AND PROVISIONAL DISCOVERY PLAN

Pursuant to FED. R. CIV. P. 26(f), a meeting was held on August 20, 2015at 10:00 a.m. and was attended by:

    Christopher Orton for Plaintiff

    John K. Ziegler for Defendant

On January 28, 2014, this case was removed to this Court. [Doc. 1]. On January 30, 2014, PNM filed a motion to dismiss Plaintiff's Title VII and New Mexico Human Rights Act claims. [Doc. 3]. On March 14, 2014, District Judge William P. Johnson granted the Motion. [Doc. 14].

On May 8, 2014, the parties filed a Joint Status Report and Provisional Discovery Plan [Doc. 25]. After the reassignment to Magistrate Judge Yarbrough, the parties conferred again and filed a Revised Joint Status Report and Provisional Discovery Plan. [Doc. 35].

On April 30, 2014, PNM filed a motion for summary judgment on Plaintiff's breach of contract claim. [Doc. 22] A scheduling conference was held on July 15, 2014 and discovery was stayed. [Doc. 38]. On July 16, 2014, District Judge William P. Johnson dismissed the breach of contract claim (i.e., at that time, the remaining claim in the lawsuit). [Docs. 36-37].

1

Plaintiff appealed the dismissal of the Title VII and NMHRA claims. On May 15, 2015, the Tenth Circuit reversed Judge Johnson's dismissal of those claims and remanded the case to this Court for further proceedings. [Doc. 45].

On July 8, 2015 PNM filed a Motion to Dismiss for Lack of Subject Matter Jurisdiction [Doc. 47]. PNM argued that the NMHRA claim was untimely. On August 3, 2015, the Court granted the Motion. [Doc. 50].

On August 4, 2015 an Initial Scheduling Order was entered. [Doc. 51]. The parties have conferred and submit this Second Revised Joint Status Report and Provisional Discovery Plan.

## NATURE OF THE CASE

Plaintiff asserted in the Complaint the following claims: (1) Count I - Discrimination in Violation of the New Mexico Human Rights Act ("NMHRA"); (2) Count 2 - Breach of Implied Contract (3) Count III - Retaliation in Violation of Title VII. The NMHRA and breach of contract claims have been dismissed by the Court. [Docs. 14, 36]. The only remaining claim is Title VII – Retaliation.

## AMENDMENTS TO PLEADINGS AND JOINDER OF PARTIES

The Parties have had sufficient time to amend.

## STIPULATIONS

The parties hereto stipulate and agree that venue is properly laid in this District.

## PLAINTIFF'S CONTENTIONS

Plaintiff began his employment with the Defendant on April 29, 1994 as an Electrical Apprentice. At the time of his hiring Plaintiff was scored as the highest candidate in both his interview and in his assessments. Despite his scores, two other lower candidates were hired before him.

In 2007, PNM opened a foreman position in the transmission department. Two Hispanic workers (Plaintiff and Gilbert Padilla) and one Anglo worker (Wes McKenzie) applied for the position (promotion).

Norm Dunn, the supervisor of the position announced to a number of workers that he wanted the Anglo worker (Wes McKenzie) to get the position. At that time, in order to make sure the Anglo worker received the position, Norm Dunn discarded the normal hiring questions and made up his own questions tailored to be best answered by the Anglo applicant (Wes McKenzie).

Plaintiff then filed a complaint with the Defendant's Human Resources Department about the changing of the questions. In reaction to these complaints Norm Dunn was made follow the original job questions and criteria. Plaintiff then answered all of the questions correctly and Norm Dunn was forced to give Plaintiff the position.

Upon reporting for the new position, Plaintiff was immediately brought into a meeting with his supervisor and HR. During this meeting Plaintiff was told he would not be receiving his own crew as all the other Anglo foremen had, but instead would have to "shadow" an Anglo foreman (Steve Booth) for 2 years.

Over the next two years, Plaintiff was subject to harassment, retaliation and racial slurs by his supervisor. This included disciplining Plaintiff for refusing to violate safety rules, disciplining Plaintiff for having incomplete tools at a jobsite and disciplining Plaintiff for not allowing his employees to work on a dangerous worksite without proper protective gear. During the same time, the white foremen did the same activities but received no discipline.

Plaintiff's supervisor would also use racial slurs towards Plaintiff always referring to him as a Mexican or a landscaper, telling Plaintiff if he needed more help to go hire more Mexicans,

referring to tools the Plaintiff was using as Nigger lips and posting racially derogatory or sexually offensive posters.

In reaction to this treatment, Plaintiff filed several complaints with the Human Resources department. As retaliation for these complaints, Plaintiff's supervisor gave Plaintiff bad evaluations, assigned him menial duties including cleaning of tools and doing inventory, took away his company vehicle and required him to go to numerous and more invasive drug screenings.

On October 31, 2008 Plaintiff was called into a meeting with the Human Resources Department. During this meeting Plaintiff was told his complaints had been found to have merit. Human Resources then stated they did not want to change the transmission department and instead would be moving Plaintiff to another department.

Plaintiff objected to being moved to another department stating that he was not the one at fault and that he had concerns about working in the new department of distribution because it was known that the supervisor in that department (Dale Smith) was a close friend of his previous supervisor. Plaintiff stated that he feared the retaliation and discrimination would continue.

Plaintiff was told that he had no choice and would be moved to be a foreman in the Distribution department under Dale Smith. Almost immediately upon working for Dale Smith, the harassment and retaliation once again started.

The retaliation included, Dale Smith trying on numerous occasions to have Plaintiff terminated. In addition he disciplined Plaintiff for numerous fictitious reasons including; not turning in expense reports even though Plaintiff had proof that he had submitted them, blaming Plaintiff for other employees vehicle accidents, changing Plaintiff's hours worked, blaming

Plaintiff for not understanding confusing or improperly numbered job assignments and even attempting to illegally garnish Plaintiff's wages for proven business expenses.

Plaintiff once again complained about the harassment and retaliation to Human Resources. Plaintiff was then again force transferred to the systems reliability department under Mark Martinez.

For the next year Plaintiff was still harassed by Dale Smith even though he was no longer in Mr. Smith's department.  Mr. Smith continued to criticize Plaintiff's vouchers and expenses and continued to change Plaintiff's hours worked.

Soon after Plaintiff's transfer, the second level supervisor over Dale Smith and Mark Martinez resigned.  PNM's policy is to have all supervisors act rotate into that position for two week intervals.  During the time when Dale Smith was the second level supervisor, he canceled Plaintiff's vehicle order and returned Plaintiff's expense reports as being improper.

## **DEFENDANT'S CONTENTIONS**

PNM generally denies the allegation of the Complaint and above.  See also its Motions to Dismiss and its Motion for Summary Judgment.  The only remaining claim is Count III – Violation of Title VII – Retaliation.  Much of what is discussed above does not relate to the retaliation claim. Plaintiff can only pursue a retaliation claim for which he filed a timely charge and a timely lawsuit. With respect to the remaining claim, PNM also states as follows:

PNM had legitimate, non-retaliatory, business and public policy reasons for all actions taken with respect to each Plaintiff.

All of PNM's actions were justified and/or privileged, PNM acted in good faith, pursuant to bona fide legitimate business rights, reasons, purposes, or privileges, and PNM acted without improper motive, improper means, wrongful act or intent to injure Plaintiff.

PNM breached no legal duties with respect to Plaintiff's employment and, is therefore, not liable.

The claims are barred or limited by waiver, estoppel, unclean hands, bad faith, modification, novation, lack of privity and/or laches.

The Complaint fails to state a claim in whole or in part upon which relief may be granted.

Depending on discovery, the claims may be barred in whole or in part by Plaintiff's failure to mitigate his alleged damages.

To the extent Plaintiff alleges emotional distress, it was a result of independent, intervening causes unrelated to Plaintiff's employment or was the result of each Plaintiff's own misconduct.

PNM is not liable for punitive damages because it did not authorize, ratify or participate in any conduct that would warrant the imposition of punitive damages. They are further barred by the substantive and procedural provisions of the Constitution of the United States and the State of New Mexico.

Plaintiff's claims are barred, and/or limited, by Plaintiffs failure to satisfy, exhaust and timely comply with the requirements of Title VII, and by the Court's lack of jurisdiction over the claims. The Title VII claim is untimely.

Any claims seeking damages for emotional distress, depression, embarrassment, humiliation and pain and suffering are barred or preempted by the exclusivity provision of the New Mexico Workers' Compensation Act.

There is no casual connection between Plaintiff's alleged protected activities and any employment actions taken against him.

Depending on discovery, Plaintiff's claims and/or their damages may be barred or limited, in whole or in part, based on the doctrine of after acquired evidence.

PNM owed no duty to Plaintiff, breached no duties and/or the actions complained about by Plaintiff were not the proximate harm of the alleged damages.

Plaintiff's claims may be barred by applicable statute of limitations.

## **PROVISIONAL DISCOVERY PLAN**

The parties jointly propose to the Court the following discovery plan:

Plaintiff intends to obtain the following discovery:

1. Depositions

    a. Plaintiff

    b. Witnesses identified by Plaintiff/Defendant

    c. Any experts identified by the Defendant

    d. Plaintiff's medical and psychological physicians

    e. Any other fact witnesses or witnesses needed to rebut the claims and testimony of the Defendant.

2. Interrogatories, requests for production, requests for admissions.

3. Independent medical/psychological evaluations as necessary

PNM intends to obtain the following discovery:

1. Depositions

    a. Plaintiff

    b. Witnesses identified by Plaintiff

    c. Any experts identified by Plaintiff

    d. Plaintiff doctors

    e. Any other fact witnesses or witnesses needed to obtain or preserve testimony or due to unavailability.

    f. Records subpoenas and/or deposition of records custodians as necessary.

7

2. Interrogatories, requests for production, requests for admissions.

3. Independent medical/psychological evaluations as necessary.

**WITNESSES**

Plaintiff anticipates that the following individuals may testify and/or be deposed:

Plaintiff anticipates that the following individuals may testify and/or be deposed:

1. Plaintiff, Joseph Montano, c/o Legal Counseling Services 12231 Academy Rd. NE, #301-304, Albuquerque, New Mexico 87111, (505) 266-2753.  Plaintiff will testify to all claims and counts in the complaint including damages and liability.

2. Gilbert Padilla, current Foreman for the Defendant, Telephone number 768-2805.  Mr. Padilla will testify to the pay discrepancies and how hard it is for Hispanics to get promotions including his own experiences trying to get promoted.  In addition he will testify to the retaliation an employee will suffer if they complain about discrimination and discussions he had with the Plaintiff and others about the discrimination and retaliation.

3. Norm Dunn, Plaintiff's supervisor for the Defendant, PNM 414 Silver Ave. SW Albuquerque, New Mexico 87102, Telephone 241-2700.  This witness will testify to Plaintiff's performance and attempts for promotion.  In addition he will testify to his own promotions including pay and experience and discriminatory comments and demonstration at the work place.

4. Wes McKenzie, Foreman for the Defendant, PNM, 414 Silver Ave. SW Albuquerque, New Mexico 87102, Telephone 241-2700.   This witness will testify to Plaintiff's performance and attempts for promotion.  In addition he will testify to the retaliation concerning Plaintiff and other Hispanics.

5. Isaac Padilla, Supervisor for the Defendant, PNM, 414 Silver Ave. SW Albuquerque, New Mexico 87102, Telephone 241-2700. This witness will testify to the discriminatory attitude and discriminatory comments made by the Defendant's managers. In addition he will testify to his own promotions including pay and experience.

6. Steve Dettmer, Plaintiff's second level supervisor and former co-worker of Plaintiff/employee of Defendant, PNM, 414 Silver Ave. SW Albuquerque, New Mexico 87102, Telephone 241-2700. This witness will testify to Plaintiff's performance, work product and attempts for promotion. In addition he will testify to his own promotions including pay and experience.

7. Dale Smyth, supervisor of Plaintiff/employee of Defendant. PNM, 414 Silver Ave. SW Albuquerque, New Mexico 87102, Telephone 241-2700. This witness will testify to Plaintiff's performance and attempts for promotion. In addition he will testify to his own promotions including pay and experience.

8. Mark Martinez, co-worker/supervisor of Plaintiff/employee of Defendant PNM, 414 Silver Ave. SW Albuquerque, New Mexico 87102, Telephone 241-2700. This witness will testify to Plaintiff's performance and attempts for promotion. In addition he will testify to his own promotions including pay and experience.

9. Any witnesses to rebut Defendant's assertions.

10. Any witnesses listed by the Defendant.

Given the nature of the complaint, Plaintiff's claims are not fully understood and he is limited to asserting a Title VII retaliation claim for which he filed a timely charge and lawsuit. If Plaintiff is able to discuss all of the above issues, PNM anticipates that the following individuals may testify and/or be deposed:

1. Plaintiff

2. Norm Dunn (retired), c/o Conklin, Woodcock & Ziegler, P.C. – Mr. Dunn may testify about the transfer, Plaintiff, Plaintiff's allegations, and other related matters.

3. Kirk Moser (retired), c/o Conklin, Woodcock & Ziegler, P.C. – Mr. Moser may testify about Plaintiff's allegations, Plaintiff, the CBA, the transfers of Plaintiff, PNM policies and procedures and related matters.

4. Sonia Otero, HR Business Partner, c/o Conklin, Woodcock & Ziegler, P.C.– Ms. Otero may testify about Plaintiff's allegations, Plaintiff, the transfers, the CBA, PNM policies and procedures and related matters.

5. Anna Ortiz, HR Director, c/o Conklin, Woodcock & Ziegler, P.C. – Ms. Ortiz may testify about Plaintiff's allegations, Plaintiff, the transfers, the CBA, PNM policies and procedures and related matters.

6. Christa Belt, former Business Partner, 414 Silver Ave. SW, Albuquerque, N.M., 87102– Ms. Belt may testify about Plaintiff's allegations, Plaintiff, the transfers, the CBA, PNM policies and procedures and related matters.

7. Jeff Nawman, Team Manager II, c/o Conklin, Woodcock & Ziegler, P.C. – Mr. Nawman may testify about Plaintiff's allegations, Plaintiff, the transfers, the CBA, PNM policies and procedures and related matters.

8. Becky Chisman, Lead HR Compliance Analyst, 414 Silver Ave. SW, Albuquerque, N.M., 87102– Ms. Chisman may testify about the transfer, the investigations, Plaintiff's allegations, Plaintiff, the transfers, the CBA, PNM policies and procedures and related matters.

9. JoAnne Garcia – HR Business Partner - c/o Conklin, Woodcock & Ziegler, P.C. – Ms. Otero may testify about the foreman position, Plaintiff, PNM policies and procedures and related matters.

10. Other witnesses who may be disclosed during discovery, including experts.

11. Any witnesses disclosed by Plaintiff or in documents produced.

12. Rebuttal witnesses whose testimony cannot be reasonably anticipated at this time.

13. Any witnesses necessary to authenticate documents, time records and other information.

## EXHIBITS

Plaintiff anticipates that the following exhibits may be offered as evidence at trial:

1. Plaintiff's applications for promotion
2. Matrix results in positions Plaintiff applied for.
3. Plaintiff's EEOC files
4. Plaintiff's investigation findings and interviews
5. Plaintiff's written intent to discipline letters and results
6. Any documents produced through the course of discovery.
7. The Plaintiff's personnel file.
8. E-mails concerning Plaintiff's internal and external complaints.
9. Emails concerning time allocation.
10. Emails concerning discipline.
11. Project memos, assignments and results

PNM anticipates that the following documents or categories of documents may be offered as evidence at trial:

1. Relevant portion of each Plaintiff's personnel file and e-mails

2. Medical records and evaluations

3. Pertinent policies and CBA's

4. Relevant portions of each Plaintiff's EEOC/HRD charge file

5. Any documents listed by Plaintiff.

6. Any other documents disclosed during discovery or produced to Plaintiff in

11

response to public records requests

      7.      Expert's CVs and supplementary exhibits, if experts are used

      8.      Any rebuttal exhibits, the need for which cannot be anticipated at this time

## **EXPERTS**

Plaintiff anticipates that the following experts may be called at trial:

Plaintiff has not retained any experts yet, but will comply with expert disclosure requirements in the event they do retain an expert.

PNM anticipates that the following experts may be called at trial:

PNM has not identified any experts that will be called at trial. It may, however, call Plaintiff's doctors.

## **DISCOVERY**

Discovery will be needed on the issues of liability and damages;

Maximum of 25 interrogatories from Plaintiff to PNM. Maximum of 25 interrogatories from PNM to Plaintiff. (Responses due 30 days after service).

Maximum of 25 requests for admission from Plaintiff to PNM. Maximum of 25 requests for admission from PNM to Plaintiff. (Response due 30 days after service).

Maximum of 25 requests for production from Plaintiff to PNM. Maximum of 25 requests for production from PNM to Plaintiff. (Response due 30 days after service).

Maximum of 10 depositions by Plaintiff(s) and 10 by PNM.

Each deposition (other than of Plaintiff) limited to maximum of 4 hours unless extended by agreement of parties.

Reports from retained experts under Rule 26(a)(2) due:

    from Plaintiff(s) by November 15, 2015

    from PNM by January 15, 2016

Supplementation under Rule 26(e) due 20 days after report is due/need for supplementation arises.

<u>All discovery commenced in time to be complete by March 4, 2016</u>.

### PRETRIAL MOTIONS

Plaintiff intends to file: None at this time

PNM intends to file: (1) Motions to dismiss and/or for summary judgment; (2) motions in limine; and (3) discovery motions, if necessary.

### ESTIMATED TRIAL TIME

The parties estimate trial will require 5-7 days.

\_\_\_\_ This is a non-jury case.

 X   This is a jury case.

The parties request a pretrial conference 30 days before trial.

### SETTLEMENT

The possibility of settlement in this case is very poor and cannot be evaluated prior some discovery taking place.  The parties request a settlement conference in March or April 2016.

### EXCEPTIONS

(Where counsel cannot agree to any recitation herein, exceptions shall be listed.)


APPROVED WITH/WITHOUT EXCEPTIONS
(note exceptions above)

<u>/s/ Christopher N. Orton</u>
For Plaintiff

<u>/s/ John K. Ziegler</u>
For PNM