## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

_____

JOSEPH M. MONTANO,

      Plaintiff,

v.                            No. 1:14-cv-00079 WJ/SCY

PUBLIC SERVICE COMPANY OF NEW MEXICO,

      Defendant.

### MEMORANDUM OPINION AND ORDER
### DENYING DEFENDANT'S MOTION TO DISMISS COUNT III OF PLAINTIFF'S
### COMPLAINT FOR FAILURE TO STATE A CLAIM

THIS MATTER comes before the Court upon Defendants' Motion to Dismiss Count III of Plaintiff's Complaint for Failure to State a Claim, filed September 10, 2015 **(Doc. 53)**. Having reviewed the parties' briefs and applicable law, the Court finds that Defendant's motion is not well-taken and, accordingly, is DENIED.

### BACKGROUND

In this lawsuit, Plaintiff alleges claims of discrimination and retaliation against his former employer Public Service Company of New Mexico ("PNM").  The Complaint alleges three claims: Race Discrimination in Count I; Breach of Implied Contract in Count II; and Title VII Retaliation in Count III. Plaintiff initially filed the complaint on November 15, 2012 in the Second Judicial District Court, County of Bernalillo.   On June 6, 2013, Plaintiff's claims were dismissed without prejudice by New Mexico State District Judge Nan Nash for failure to prosecute and were subsequently revived by the state court on November 12, 2013 after Plaintiff filed a Request to Reopen.  Defendant PNM removed the lawsuit to federal court on January 28, 2014.

## I.    Procedural Background

Based on the Court's previous rulings, Count III, alleging Title VII retaliation is the only remaining claim.  *See* Docs. 14, 36 and 50.  The Court initially dismissed both Counts I and III as time-barred after these claims were dismissed for lack of prosecution in state court and then reinstated.  *See* Doc. 14.  The Court then granted Defendant's motion to dismiss Count II as preempted by §301 of the Labor Management Relations Act (*see* Doc. 36), and Plaintiff appealed the Court's rulings on Counts I and III.  On appeal, the Tenth Circuit addressed only the effect of reinstatement, namely whether the reinstatement reactivated the original action. Because Defendant did not raise the issue of timeliness of the original complaint on appeal, the Tenth Circuit assumed that the original complaint was timely.  *See Montano v. Public Serv. Co. of New Mexico*, 2015 WL 1840938, *1 (Apr. 23, 2015) (Order and Judgment). Following remand, the Court subsequently granted Defendant's motion to dismiss Count I based on Plaintiff's failure to exhaust administrative remedies, finding that the original complaint was in fact time-barred because it was filed outside the 90-day limitations period  (*see* Doc. 50).[1]

### DISCUSSION

In Count III of the Complaint, Plaintiff asserts that he has been on the receiving end of harassment and retaliation by his supervisor.  To start with, he alleges that he received a promotion only after complaining that the process being favored an Anglo worker.  Plaintiff eventually got the promotion, but was continually subjected to disparate treatment in retaliation for filing complaints with Human Resources.[2]  Defendant contends that the allegations in the

---

[1]  Details of the Court's analysis and findings can be found in the cited court decisions: Docs. 14, 36 and 50.

[2]  The Joint Status Report states that Plaintiff intends to file an amended complaint on Count III "by October 30, 2015."  Doc. 25.  However Plaintiff has not requested leave to amend as of this time, and the Court agrees with Defendant that Plaintiff's intention to amend has no bearing on the integrity of his original complaint.

complaint fail to state a valid cause of action under the legal standard applicable to a Title VII retaliation claim and moves to dismiss Count III.

## I.     Legal Standard

Rule 12(c) of the Federal Rules of Civil Procedure provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." A motion under Rule 12(c) is generally treated in the same manner as a Rule 12(b)(6) motion to dismiss. *Mock v. T.G.&Y Stores Co*., 971 F.2d 522, 528 (10th Cir. 1992).  In reviewing a motion to dismiss, the Court accepts all well-pleaded factual allegations in the complaint as true and then determines whether the complaint plausibly states a legal claim for relief.  *Gallagher v. Shelton,* 587 F.3d 1063, 1068 (10th Cir. 2009).  A motion for judgment on the pleadings "[is] functionally equivalent to motions to dismiss and [is] reviewed under the same standards." *Id.* (citing *Nelson v. State Farm Mut. Automobile Ins. Co*., 419 F.3d 1117, 1119 (10th Cir. 2005)).  These standards require that the complaint "must contain facts that, if assumed to be true, state a claim to relief that is plausible on its face."  *Gerald v. Locksley*, 785 F. Supp. 2d 1074, 1087 (D.N.M. 2011). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  In ruling on a motion to dismiss, "a court should disregard all conclusory statements of law and consider whether the remaining specific factual allegations, if assumed to be true, plausibly suggest the defendant is liable." *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011).  Dismissal is appropriate where a plaintiff asserts causes of action that have no basis in the law. *See, Twombly*, 550 U.S. 544, 560- 61 (2007). Mere "labels and conclusions" or "formulaic recitation[s] of the elements of a cause of action" will not suffice.  *Twombly*, 550 U.S. at 555.

## II.    Analysis

A Title VII retaliation claim is analyzed under the *McDonnell Douglas* burden shifting framework. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802; *Jeffries v. State of Kansas*, 147 F.3d 1220, 1231 (10th Cir.1998) (applying the *McDonnell Douglas* framework to a claim of retaliation). Following this framework, an employee must first present a prima facie case of retaliation, which then shifts the burden to the employer to produce a legitimate, non-discriminatory justification for taking the disputed employment action. *Jones v. Barnhart*, 349 F.3d 1260, 1266 (10th Cir.2003).  If the employer provides a legitimate, non-discriminatory justification for the action, the burden shifts back to the employee to provide evidence showing that the employer's proffered reason is a pretext for discrimination. *Id*. An employee may demonstrate pretext by showing the employer's proffered reason was so inconsistent, implausible, incoherent, or contradictory that it is unworthy of belief. *Bausman v. Interstate Brands Corp*., 252 F.3d 1111, 1120 (10th Cir. 2001). .

"For a prima facie case of retaliation, an employee must prove that (1) he engaged in protected opposition to discrimination; (2) he suffered an adverse action that a reasonable employee would have found material; and (3) there is a causal nexus between his opposition and the employer's adverse action. *Johnson v. Weld County, Colo*., 594 F.3d 1202, 1215 (10th Cir. 2010) (citing *Williams v. W.D. Sports, N.M., Inc*., 497 F.3d 1079, 1086 (10th Cir.2007)). Further, a plaintiff making a retaliation claim under § 2000e–3(a) "must establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer." *Davis v. Unified Sch. Dist*. 500, 750 F.3d 1168, 1170 (10th Cir. 2014) (internal punctuation omitted), citing *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2534, 186 L. Ed. 2d 503 (2013) (noting stricter

causation standard for retaliation claims asserted under Title VII as compared to claims of discrimination).

    A.    <u>Contours of Adverse Action for Title VII Retaliation Claims</u>

Plaintiff lists what he considers to be seven instances of retaliation as alleged in his complaint, all occurring after he filed complaints with Human Resources.  Defendant argues that Plaintiff cannot meet a prima facie case of retaliation because none of the actions taken by PNM qualify as adverse actions.  However, while Defendant correctly defines a prima facie case, Defendant's argument is premised on a faulty definition of "adverse action" for purposes of a Title VII retaliation claim.  Citing to a Tenth Circuit case, *Tapia v. City of Albuquerque,* Defendant defines an adverse action as one that "constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits."  170 Fed.Appx. 529, 533 (10th Cir. 2006).  However, a few years ago, the United States Supreme Court addressed the contours of adverse employment actions for retaliation claims in *Burlington Northern & Santa Fe Ry. v. White*, 548 U.S. 53 (2006). *Burlington Northern* applied a more lenient standard in analyzing the anti-retaliation provisions of Title VII and modified the relevant inquiry to whether the employer's action" might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington Northern,* 548 U.S. at 60.[3]

---

[3] The Tenth Circuit decided *Tapia* four months before the United States Supreme Court decision came out in *Burlington* was decided and thus is of little relevance to the analysis here.  Tenth Circuit decisions subsequent to *Burlington* have noted the change as the current standard for retaliation adverse actions.  *See, e.g., Argo v. Blue Cross and Blue Shield of Kansas, Inc*., 452 F.3d 1193 (10th Cir. 2006) (noting *Burlington Northern* rejected former standard for adverse actions for retaliation claims); *Piercy v. Maketa*, 480 F.3d 1192 (10th Cir. 2007) (noting that *Burlington Northern* modified retaliation standards for adverse actions, but that "it had no similar effect on [discrimination claims]."

B.     <u>Plaintiff's Allegations as Basis for Retaliation</u>

Plaintiff points to several instances of alleged retaliation in the complaint.   The first one relates to a promotion to a foreman position that had opened up in 2007.  Plaintiff complained to Human Resources ("HR department" or "HR") that the interview questions had been changed in order to increase the chances of an Anglo worker getting the position.   After making the complaint, Plaintiff asserts that he was "immediately" brought into a meeting with his supervisor and HR."  He was told he would not be getting his own crew as the other Anglo foreman  had, but instead "would have to shadow an Anglo foreman for 2 years."   Plaintiff asserts that he continued to be singled out during those two years, subjected to disparate disciplinary treatment for allegedly having incomplete tools at a jobsite and for not allowing his employees work on a dangerous worksite without proper protective gear.  Plaintiff contends that the Anglo foreman received no discipline for the same activities.  Compl., ¶¶9-14.

The second retaliatory act started with Plaintiff's supervisor using racial slurs towards him, referring to him as a "Mexican or landscaper" and telling Plaintiff if he needed more help to "go hire more Mexicans."  Plaintiff states that after filing several complaints based on this this behavior with HR, his supervisor gave him bad evaluations, assigned him "menial duties" such as cleaning tools and doing inventory," took away his company vehicle and required him to have more frequent and invasive drug screenings.  Compl., ¶¶15-17.

The third retaliatory act occurred when, at a October 31, 2008 meeting with the HR department, Plaintiff was told that his complaints had merit.  However, instead of remedying the situation, HR moved him to another department.  Compl., ¶ 18.  Plaintiff alleges a fourth act of retaliation when he objected to being moved to another department because of his apprehension that the new supervisor, Dale Smith, was a close friend of his previous supervisor.  He expressed

6

to the HR department that he "feared the harassment and discrimination would continue." Plaintiff was nevertheless transferred to the department under Mr. Smith's supervision.  Compl., ¶ 19.

In the fifth alleged act of retaliation, Plaintiff alleges that Mr. Smith disciplined him for "numerous fictitious reasons" including: not turning in expense reports even though the Plaintiff had proof that he had submitted them, blaming Plaintiff for other employee's vehicle accidents, changing Plaintiff's work hours, blaming Plaintiff for not understanding confusing or improperly number job assignments and even attempting to illegally garnish Plaintiff's wages for proven business expenses."  Compl., ¶ 22.

The sixth retaliatory act is based on another complaint Plaintiff made to Human Resources about harassment and retaliation.  Following this complaint, Plaintiff was transferred to another department under Mark Martinez where he continued to be harassed by his former supervisor Mr. Smith who "continued to criticize Plaintiff's vouchers and expenses and continued to change the Plaintiff's hours worked."  Compl., ¶ 24.

The seventh and last act of alleged retaliation occurred after Mr. Smith was reassigned as a second level supervisor over Plaintiff.  Mr. Smith is alleged to have "canceled Plaintiff's vehicle order and returned Plaintiff's expense reports as being improper."  Compl., ¶ 25.

Defendant contends that Plaintiff's allegations of retaliatory acts sound more like claims of disparate treatment discrimination.  However, the Court is not aware of any bright line which precludes allegations which look like disparate treatment from also constituting adverse actions under the current definition of adverse action as set out by *Burlington Northern*.  The actions taken by Plaintiff's supervisors could fairly be viewed as actions that might dissuade a reasonable worker from making or supporting a charge of discrimination; in other words, those

actions might make a reasonable worker think twice before lodging a complaint with the Human Resources department in order to avoid further similar actions.

To be sure, there are gaps in certain information, such as an exact timeline between the protected activity (the filing of complaints with Human Resources) and some of the alleged retaliatory actions.   A time gap that is too far out between the protected activity and the alleged retaliatory act cannot support an inference of retaliatory motive or the required causal connection.   *Proctor v. UPS,* 502 F.3d 1200, 1208-09 (10th Cir. 2007) (causal connection may be shown by "protected conduct closely followed by adverse action.").   The Tenth Circuit has found that a three-month period, standing alone, is insufficient to establish causation.  *Id.* (citing *Richmond v. ONEOK, Inc.,* 120 F.3d 205, 209 (10th Cir. 1997).   Also, there may be some lack of detail with regard to who was responsible for imposing the disparate disciplinary treatment, although it is clear that Plaintiff charges most of the allegedly retaliatory acts to his supervisors. For example, Plaintiff describes the third retaliatory act as moving him to another department because Human Resources "did not want to change the transmission department."  Compl,, ¶ 18. It is not clear that the individuals who allegedly held retaliatory motive (here, it seems that Plaintiff is pointing to Human Resources as responsible for the allegedly retaliatory action of transferring him) are the same as those who permitted him to allegedly be improperly disciplined and harassed (this would seem to be Plaintiff's supervisors).   An adverse action must have been taken for the purpose of retaliating, and a disconnect between the individual allegedly harboring retaliatory motive and the individual responsible for the adverse action  could prove fatal to the causation element in a retaliation claim.  *See, e.g., Bullington v. United Air Lines,* 186 F.3d 1301 (no nexus between decision not to hire plaintiff as flight officer and protected activity where there was no showing that persons who decided hiring even knew of complaint); *Willis v. Marion*

*County Auditor's Office*, 118 F.3d 542, 546 47 (7th Cir.1997) (concluding plaintiff failed to demonstrate that relevant decision maker harbored retaliatory animus towards plaintiff). Shortcomings such as these are better dealt with in a Rule 56 motion. For now the Court finds that when taking Plaintiff's allegations as true, these allegations state a claim for relief that is plausible on its face under Rule 12(c).

**THEREFORE,**

**IT IS ORDERED** that Defendants' Motion to Dismiss Count III of Plaintiff's Complaint for Failure to State a Claim **(Doc. 53)** is hereby DENIED for reasons described in this Memorandum Opinion and Order.

_____
UNITED STATES DISTRICT JUDGE